**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BRENDA TRACY,**

    Plaintiff,

Case No. 1:25-cv-00614

Hon. Paul L. Maloney, U.S. District Judge
Hon. Maarten Vermaat, U.S. Magistrate Judge

v.

**BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY, DENNIS DENNO and REMA VASSAR, current members of the BOARD OF TRUSTEES of Michigan State University, in their personal and official capacities, jointly and severally,**
Defendants.

_____

## **FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Brenda Tracy, by and through her attorney, Karen Truszkowski, hereby files the following amended complaint against Defendants as captioned above

**PRELIMINARY STATEMENT**

1. This action arises from Defendants' coordinated campaign of retaliation, disparagement, and unlawful disclosure directed at Plaintiff after she reported misconduct at Michigan State University ("MSU").

2. Rather than address Plaintiff's complaints in good faith, Defendants weaponized litigation filings, media communications, and institutional authority to stigmatize her, destroy her nonprofit and speaking business, and silence her from further protected activity.

3. Plaintiff brings claims under Title IX of the Education Amendments of 1972, the First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, and Michigan common law.

4. Although many claims arise from overlapping facts, each asserts a distinct legal theory. Title IX provides an independent statutory remedy; §1983 vindicates constitutional guarantees including free speech, due process, equal protection, and informational privacy; and state-law torts address reputational, privacy, contractual, and economic injuries.

5. Plaintiff pleads these claims in the alternative, as permitted by Fed. R. Civ. P. 8(d). While some claims share a factual basis, each asserts a distinct legal right and provides a separate path to relief.

6. As a condition of receiving federal funding, MSU executed **Assurances of Compliance** with the U.S. Department of Education, expressly committing to protect complainants from retaliation, safeguard confidentiality, and enforce grievance procedures. Defendants' conduct in this case flagrantly violated those binding Assurances, demonstrating deliberate indifference and bad faith.[1]

7. The Court has already recognized in *Lipton v. MSU Board of Trustees* that MSU Trustees and administrators may be held liable for retaliation, stigmatization, and reputational destruction aimed at silencing protected speech.[2]

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under federal law, including Title IX and 42 U.S.C. § 1983.

9. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within this District.

11. Plaintiff pleads her claims in avoidance of immunity defenses. Title IX abrogates Eleventh Amendment immunity. Plaintiff seeks damages against individual Defendants in their personal capacities under §1983 and injunctive relief against

---

[1] [1] U.S. Dep't of Educ., Office for Civil Rights, *Assurance of Compliance with Civil Rights Requirements*, Form OMB No. 1870-0503 (rev. 2014).
[2] [2] *Lipton v. Mich. State Univ. Bd. of Trs.*, No. 1:24-cv-1029, slip op. at __ (W.D. Mich. May 28, 2025).

officials in their official capacities under *Ex parte Young*. Plaintiff's state-law tort claims fall within exceptions to the Michigan Governmental Tort Liability Act, including malice, bad faith, and gross negligence.

**FACTUAL ALLEGATIONS**

12. Plaintiff Brenda Tracy is a nationally recognized advocate for sexual assault survivors who has devoted her career to prevention, education, and institutional accountability.

13. MSU engaged Plaintiff as an independent contractor to provide training and educational programming on sexual misconduct prevention.

14. While working under this engagement, Plaintiff was subjected to unwelcome sexual harassment and sex-based misconduct by a university employee with supervisory authority.

15. Plaintiff reported the misconduct through the University's designated RVSM / Title IX channels.

16. MSU's Office of Institutional Equity ("OIE") initiated an investigation into Plaintiff's complaint.

17. At all relevant times, Plaintiff was assured of confidentiality, impartiality, and freedom from retaliation in accordance with Title IX requirements and MSU's representations.

18. Despite these assurances, Plaintiff's identity and confidential information were disclosed, resulting in reputational harm and intense public scrutiny.

19. This disclosure directly harmed Plaintiff's nonprofit organization and her speaking business, causing donor withdrawal, sponsor cancellations, and loss of professional opportunities.

20. Ultimately, these harms caused Plaintiff's nonprofit and her speaking corporation to collapse.

**MSU's Mishandling of Plaintiff's Confidentiality**

21. MSU failed to safeguard Plaintiff's identity during the OIE investigation.

22. Plaintiff's name was improperly shared with individuals outside the process, some of whom had close ties to MSU donors and administrators.

23. These disclosures were not accidental; they reflected institutional disregard for Plaintiff's confidentiality.

24. The resulting publicity exposed Plaintiff to ridicule, hostility, and reputational destruction.

25. The consequences were entirely foreseeable given Plaintiff's public profile and the sensitivity of the allegations.

**Jones Day Conflict of Interest**

26. MSU retained Jones Day as an "independent investigator" into the disclosure of Plaintiff's identity.

27. Jones Day's findings were potentially averse to MSU and its Board of Trustees, concluding the leak of a confidential email attributable to twelve potential MSU personnel.

28. Despite this, MSU later retained Jones Day to serve as defense counsel in this litigation.

29. This dual role created a non-waivable conflict of interest: Jones Day is in the position of discrediting its own findings or undermining Plaintiff by leveraging confidential information obtained during its investigative role.

30. This conflict further undermined Plaintiff's confidence in MSU's processes and reinforced institutional bad faith.

**Mediation Failure**

31. In late 2023, MSU's General Counsel invited Plaintiff to participate in mediation to resolve her concerns.

32. Plaintiff agreed in good faith.

33. MSU failed to schedule or conduct any mediation.

34. This conduct demonstrated bad faith and deliberate indifference, consistent with MSU's broader pattern of retaliation.

**Donor Influence and Outside Interference**

35. MSU's handling of Plaintiff's complaint was heavily influenced by donor-driven conflicts of interest.

36. One of MSU's largest donors, Mat Ishbia, had a vested interest in protecting high-profile athletics figures implicated by Plaintiff's allegations.

37. David Zacks, General Counsel of UWM (a company owned by Ishbia), inserted himself into the OIE process as Mel Tucker's representative.

38. On or about January 4–5, 2023, Zacks identified himself to the OIE investigator as Tucker's attorney and was thereafter included in investigative communications with OIE and MSU officials.

39. Neither Plaintiff nor her counsel were informed of Zacks' involvement.

40. This concealment deprived Plaintiff of transparency and the opportunity to object.

41. The undisclosed participation of Zacks created, at minimum, the appearance of donor-driven influence and institutional bias.

42. The Title IX Coordinator either knew or should have known of Zacks' involvement yet failed to take corrective action or disclose this conflict to Plaintiff.

43. This concealment violated Title IX's requirement of impartiality and further undermined the fairness of the process.

44. Upon information and belief, Donor influence permeated the handling of Plaintiff's complaint, reinforcing MSU's pattern of protecting insiders at the expense of complainants.

**Assurances of Compliance**

45. As a condition of receiving federal financial assistance, MSU executed Assurances of Compliance with the U.S. Department of Education.

46. Through these Assurances, MSU agreed to protect complainants from retaliation, safeguard confidentiality, and adopt effective grievance procedures.

47. These obligations were not aspirational—they were binding conditions for MSU's continued receipt of federal funding.

48. Defendants' conduct, including the disclosure of Plaintiff's identity, failure to investigate impartially, and retaliation through litigation filings and media coordination, directly violated these Assurances.

49. These violations were deliberate, reckless, and in bad faith.

50. The harms to Plaintiff—including reputational destruction, donor withdrawal, and collapse of her nonprofit—were foreseeable consequences of MSU's disregard for its federally mandated duties.

51. MSU's litigation position in this case, that violation of its own policies carries no consequence, directly contradicts its Assurances to DOE in which it certified its intent to uphold those very protections.

**Retaliatory Litigation Conduct**

52. After Plaintiff filed this action, MSU and its counsel engaged in retaliatory tactics.

53. Defendants publicly disparaged Plaintiff in pleadings, labeling her an "opportunist" in a Motion to Dismiss.

54. MSU's communications department then directed reporters to that filing, ensuring maximum reputational damage.

55. This was a departure from MSU's standard practice of declining comment on pending litigation.

56. Defendants' actions were calculated to stigmatize Plaintiff, deter further protected activity, and chill the exercise of her rights.

57. The foreseeable result of this retaliation was reputational harm, collapse of Plaintiff's nonprofit, destruction of her speaking business, and ongoing emotional distress.

**Collapse of Plaintiff's Nonprofit and Speaking Business**

58. Plaintiff founded a nonprofit organization dedicated to sexual assault prevention and survivor advocacy.

59. She also operated a speaking corporation that provided training, keynotes, and consulting across the country.

60. Plaintiff's reputation for integrity and advocacy was the foundation of both entities.

61. After Defendants disclosed Plaintiff's identity and disparaged her publicly, donors withdrew support for her nonprofit.

62. Sponsors canceled speaking engagements and severed ties.

63. The reputational harm caused by Defendants' disclosures and retaliatory litigation conduct foreseeably led to the financial collapse of both organizations.

64. Plaintiff lost not only current revenue but also long-term opportunities to expand her advocacy platform.

65. These harms were compounded by Defendants' ongoing disparagement in pleadings and media.

66. As a direct result of Defendants' actions, Plaintiff's nonprofit dissolved and her speaking corporation ceased operations.

**Pattern of Retaliation and Stigmatization**

67. Defendants' retaliatory conduct was not limited to disclosure of Plaintiff's identity or abandonment of mediation.

68. They coordinated stigmatizing narratives in pleadings, reinforced those narratives through media leaks, and used institutional channels to amplify reputational harm.

69. Defendants acted with the intent to chill Plaintiff's exercise of her rights and to deter other potential complainants from coming forward.

70. Defendants' actions were motivated by malice and donor-driven influence, not by any legitimate governmental purpose.

71. The foreseeable and intended result was Plaintiff's reputational destruction and economic ruin.

72. Defendants' conduct created a chilling effect on other survivors who might otherwise have come forward with complaints.

**Bad Faith and Lack of Transparency**

73. MSU repeatedly promised transparency and fairness but consistently acted in bad faith.

74. Plaintiff was excluded from critical communications, including those involving outside donor-affiliated counsel.

75. MSU represented that mediation would be pursued, then abandoned it without explanation.

76. Defendants selectively disclosed information to the media to stigmatize Plaintiff while concealing conflicts of interest from her and her counsel.

77. Defendants' litigation positions directly contradicted their Assurances of Compliance and their obligations under federal law.

78. The cumulative effect of these actions was to deny Plaintiff fair process, destroy her reputation, and silence her advocacy. The collapse of Plaintiff's organizations was not speculative but a reasonably foreseeable consequence of Defendants' actions.

79. Defendants acted with reckless disregard for Plaintiff's rights, demonstrating deliberate indifference under Title IX and bad faith under the Constitution and state law.

**Damages and Ongoing Harm**

83. As a direct and proximate result of Defendants' conduct, Plaintiff suffered reputational harm, loss of income, collapse of her nonprofit, and destruction of her speaking business.

84. Plaintiff has also suffered emotional distress, humiliation, mental anguish, and loss of professional opportunities.

85. These injuries are ongoing. Plaintiff continues to experience reputational stigma and diminished career prospects.

86. Defendants' retaliation has had a chilling effect on Plaintiff's ability to advocate for survivors, silencing her voice in a manner that was both foreseeable and intended.

## CLAIMS FOR RELIEF

**COUNT I – TITLE IX: DELIBERATE INDIFFERENCE (Defendants: Michigan State University)**
**Violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.)**

87. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88. Defendant MSU was at all relevant times a recipient of federal financial assistance within the meaning of Title IX.

89. Plaintiff was engaged by MSU to provide services within the University's educational programs and activities.

90. Plaintiff was subjected to unwelcome sexual harassment and sex-based discrimination by a University employee.

91. The conduct was severe, pervasive, and objectively offensive, creating a hostile environment that interfered with Plaintiff's ability to participate in and benefit from MSU's education program and activity.

92. MSU exercised substantial control over both the harasser and the context in which the harassment occurred.

93. Plaintiff reported the harassment and/or MSU knew or should have known of the harassment.

94. Despite this knowledge, MSU acted with deliberate indifference by failing to take prompt and effective remedial action.

95. Defendant MSU's deliberate indifference also violated its Assurances of Compliance with the U.S. Department of Education, in which it expressly committed to protecting complainants, safeguarding confidentiality, and enforcing grievance procedures as a condition of receiving federal funds.[3]

96. The harms Plaintiff suffered, including reputational injury, loss of donors and sponsors, cancellation of speaking engagements, and collapse of her nonprofit and speaking corporation—were a reasonably foreseeable and direct consequence of MSU's deliberate indifference.

97. As a direct and proximate result, Plaintiff suffered damages including emotional distress, humiliation, reputational harm, loss of professional opportunities, and economic damages.

**COUNT II – TITLE IX: RETALIATION (Defendants: Michigan State University) Violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.)**

98. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

99. Plaintiff engaged in protected activity under Title IX by reporting sex-based harassment and discrimination.

100. Following her report, MSU and its agents retaliated against Plaintiff by limiting her opportunities, subjecting her to hostility, and undermining her professional endeavors.

101. Defendants retaliated further by filing court pleadings disparaging Plaintiff as an "opportunist" and directing media attention to those stigmatizing statements.

102. Defendant MSU's retaliatory conduct further breached its Assurances of Compliance with the Department of Education, which required it to protect complainants from retaliation as a binding condition of federal funding.[4]

103. The reputational harms and economic losses caused by Defendants' disparaging pleadings and media amplification were a reasonably foreseeable result of these retaliatory acts.

104. As a direct and proximate result, Plaintiff suffered reputational harm, collapse of her nonprofit, destruction of her speaking business, emotional distress, and economic losses.

**COUNT III – FIRST AMENDMENT: RETALIATION (Defendants: Trustees – Individual Capacities; Administrators; Counsel)**
**42 U.S.C. § 1983**

105. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

106. Plaintiff engaged in constitutionally protected speech by reporting misconduct and pursuing legal remedies.

107. Defendants retaliated by disparaging her in pleadings, amplifying stigmatizing narratives in the media, and undermining her nonprofit and speaking corporation.

108. These retaliatory acts would deter a person of ordinary firmness from engaging in protected activity.

109. Defendants acted with retaliatory intent and without legitimate governmental purpose.

110. As a direct and foreseeable result, Plaintiff suffered reputational harm, emotional distress, and economic losses, including the collapse of her nonprofit and speaking corporation.

**COUNT IV – FIRST AMENDMENT: DENIAL OF ACCESS TO COURTS (Defendants: Trustees – Individual Capacities; Administrators; Counsel)**
**42 U.S.C. § 1983**

111. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

112. Plaintiff exercised her right to petition the government by reporting misconduct and filing suit.

113. Defendants obstructed Plaintiff's access to the courts by embedding stigmatizing narratives in pleadings, mischaracterizing her allegations, and coordinating media efforts to intimidate her.

114. This conduct chilled Plaintiff's pursuit of claims, discouraged witnesses, and created legal prejudice impairing her ability to obtain full relief.

115. Defendants' actions were intentional and malicious.

116. As a direct and foreseeable result, Plaintiff suffered reputational harm, delay in litigation, and economic losses.

### COUNT V – FOURTEENTH AMENDMENT: PROCEDURAL DUE PROCESS
**(Defendants: Trustees – Individual Capacities; Administrators; Counsel)**
**42 U.S.C. § 1983**

117. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

118. Plaintiff had protected liberty and property interests in her reputation, nonprofit, speaking business, and professional opportunities.

119. Defendants denied Plaintiff fair procedures by failing to disclose donor-driven involvement, concealing the participation of David Zacks in OIE communications, and failing to provide notice or impartial adjudication.

120. The deprivation of Plaintiff's protected liberty and property interests—including collapse of her nonprofit and speaking business—was a reasonably foreseeable consequence of Defendants' concealment, lack of notice, and biased procedures.

121. As a direct and proximate result, Plaintiff suffered reputational harm, emotional distress, and economic damages.

### COUNT VI – FOURTEENTH AMENDMENT: SUBSTANTIVE DUE PROCESS
**(Defendants: Trustees – Individual Capacities; Administrators; Counsel)**
**42 U.S.C. § 1983**

122. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

123. The Fourteenth Amendment protects against government action that is arbitrary, capricious, or shocks the conscience.

124.     Defendants retaliated against Plaintiff, disparaged her in pleadings, concealed conflicts of interest, and destroyed her nonprofit and speaking business in ways that shock the conscience.

125.     The harms Plaintiff suffered, including reputational destruction, loss of donors, and collapse of her advocacy platforms—were reasonably foreseeable consequences of Defendants' arbitrary and malicious actions.

**COUNT VII – FOURTEENTH AMENDMENT: EQUAL PROTECTION (CLASS OF ONE) (Defendants: Vassar and Denno – Individual Capacities**
**42 U.S.C. § 1983**

126.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

127.     Plaintiff was similarly situated to other complainants but was singled out for uniquely harsh treatment, including concealment of donor involvement, stigmatization, and reputational destruction.

128.     Defendants had no rational basis for treating Plaintiff differently, acting solely out of malice and retaliation.

129.     As a direct and foreseeable result, Plaintiff suffered reputational harm, collapse of her nonprofit, and economic losses.

**COUNT VIII – FOURTEENTH AMENDMENT: STIGMA-PLUS DUE PROCESS (Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983**

130.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

131.     Defendants stigmatized Plaintiff as not credible and untrustworthy in public filings, including a Motion to Dismiss, while also destroying her nonprofit and speaking business.

132.     Plaintiff's claim is not based on reputational injury alone, but on the combined impact of stigma and the tangible loss of career opportunities and economic livelihood.

133.     This combination of stigma and concrete harm constitutes a constitutional violation of liberty interests.

134.     As a direct and foreseeable result, Plaintiff suffered reputational harm, collapse of her nonprofit, and economic losses.

**COUNT IX – FOURTEENTH AMENDMENT: INFORMATIONAL PRIVACY (Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983**

135. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

136. The Fourteenth Amendment protects against unwarranted governmental disclosure of highly personal and sensitive information.

137. Defendants disclosed Plaintiff's private and sensitive information in public pleadings without legitimate justification and with retaliatory intent.

138. Such disclosures foreseeably resulted in reputational harm, donor withdrawal, and collapse of Plaintiff's nonprofit and speaking corporation.

**COUNT X – MONELL LIABILITY (Defendants: Michigan State University; Board of Trustees – Official Capacity)**
**42 U.S.C. § 1983**

139. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

140. MSU and its Board of Trustees are liable under 42 U.S.C. § 1983 for constitutional violations caused by official policies, customs, or decisions of final policymakers.

141. The constitutional injuries suffered by Plaintiff—including retaliation, stigma-plus deprivation, and informational privacy violations—were the direct result of Defendants' policies and customs.

142. These harms were reasonably foreseeable consequences of Defendants' policies and failures.

**COUNT XI – FAILURE TO TRAIN AND SUPERVISE (Defendants: Michigan State University; Board of Trustees – Official Capacity)**
**42 U.S.C. § 1983**

143. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

144. Defendants failed to adequately train and supervise employees and counsel to prevent retaliation, protect informational privacy, and ensure due process protections.

145. This failure amounted to deliberate indifference to the obvious risk of constitutional violations.

146. As a foreseeable result, Plaintiff suffered reputational harm, emotional distress, and economic losses.

**COUNT XII – FAILURE TO INVESTIGATE / COVER-UP (Defendants: Michigan State University; Board of Trustees – Official Capacity)**
**42 U.S.C. § 1983**

147. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

148. Defendants failed to adequately investigate Plaintiff's reports of misconduct and instead engaged in a pattern of concealment and retaliation.

149. This deliberate indifference foreseeably resulted in Plaintiff's reputational harm and loss of professional opportunities.

**COUNT XIII – RATIFICATION (Defendants: Michigan State University; Board of Trustees – Official Capacity) 42 U.S.C. § 1983**

150. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

151. Final policymakers at MSU ratified retaliatory acts and misuse of litigation filings.

152. By ratifying these acts, Defendants made them official policy, causing foreseeable and ongoing harm to Plaintiff.

**COUNT XIV – CIVIL CONSPIRACY (FEDERAL) (Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983**

153. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

154. Defendants conspired among themselves to retaliate against Plaintiff, stigmatize her, and interfere with her nonprofit and speaking business.

155. Overt acts in furtherance of this conspiracy included filing disparaging pleadings, leaking to media, and disclosing private facts.

156. As a foreseeable result, Plaintiff suffered reputational harm, collapse of her nonprofit, and destruction of her speaking business.

### COUNT XV – DEFAMATION ((Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983;

157. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

158. Defendants made false and defamatory statements about Plaintiff in pleadings and communications intended to undermine her credibility.

159. These statements were published to third parties, were false, and were made with knowledge of falsity or reckless disregard for the truth.

160. As a foreseeable result, Plaintiff suffered reputational harm and economic loss.

### COUNT XVI – FALSE LIGHT Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983

161. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

162. Defendants publicized misleading narratives portraying Plaintiff as dishonest, untrustworthy, and an opportunist, including in litigation pleadings and media amplification.

163. These portrayals placed Plaintiff in a false light offensive to a reasonable person and were made knowingly or recklessly.

164. The foreseeable harm included reputational injury, donor withdrawal, and collapse of Plaintiff's advocacy platforms.

### COUNT XVII – PUBLIC DISCLOSURE OF PRIVATE FACTS Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983

165. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

166. Defendants publicly disclosed Plaintiff's private information in pleadings without legitimate justification.

167. These disclosures were highly offensive to a reasonable person and served no public purpose, only retaliation.

168. The harms to Plaintiff—including reputational destruction and collapse of her nonprofit—were foreseeable consequences.

**COUNT XVIII – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983**

169. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

170. Defendants wrongfully interfered with Plaintiff's outside contractual relationships with donors, sponsors, and third parties.

171. It was reasonably foreseeable that disparaging Plaintiff through pleadings and media would cause the loss of contracts, donations, and speaking engagements.

**COUNT XIX – TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE (Defendants: Trustees – Individual Capacities; Administrators; Counsel)**

172. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

173. Plaintiff had valid business expectancies and prospective economic advantages through donor support and professional speaking engagements.

174. Defendants intentionally interfered by disparaging Plaintiff and amplifying stigmatizing narratives.

175. The collapse of Plaintiff's nonprofit and speaking corporation was a foreseeable result of this interference.

**COUNT XX – GROSS NEGLIGENCE as to all defendants**

176. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

177. Defendants had a duty to safeguard Plaintiff's identity and protect her from foreseeable harm.

178. Defendants breached this duty by recklessly disclosing her identity and failing to address resulting harassment and threats.

179. These harms, including reputational injury and collapse of her nonprofit—were reasonably foreseeable consequences of Defendants' conduct.

**COUNT XXI – PROMISSORY ESTOPPEL (as to all Defendents)**

180. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

181. Defendants made clear promises of confidentiality, good-faith mediation, and institutional improvements.

182. Plaintiff relied on these promises to her detriment.

183. Defendants abandoned mediation and retaliated instead.

184. As a foreseeable result, Plaintiff suffered reputational harm, collapse of her nonprofit, and economic losses.

**COUNT XXII – CIVIL CONSPIRACY (STATE LAW) (Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983**

185. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

186. Defendants combined and agreed to injure Plaintiff through tortious acts, including defamation, disclosure of private facts, and interference with business relations.

187. Overt acts included disparaging Plaintiff in pleadings, leaking information, and destroying her nonprofit and speaking corporation.

188. As a foreseeable result, Plaintiff suffered reputational harm and economic losses.

**COUNT XXIII – AIDING AND ABETTING ((Defendants: Vassar and Denno – Individual Capacities 42 U.S.C. § 1983**

189. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

190. Defendants knowingly aided, abetted, and substantially assisted one another in committing wrongful acts against Plaintiff, including defamation, public disclosure of private facts, and tortious interference.

191. As a foreseeable result, Plaintiff suffered reputational harm, collapse of her nonprofit, and destruction of her speaking business.

**COUNT XXIV – RESPONDEAT SUPERIOR (Defendants: Michigan State University) BOT)**

192. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

193. Individual Defendants acted within the scope of their employment or official authority when committing the wrongful acts alleged.

194. MSU is vicariously liable under respondeat superior for the tortious conduct of its employees and agents.

195. As a direct and foreseeable result, Plaintiff suffered reputational harm, collapse of her nonprofit and speaking business, and economic damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award the following relief:

a. Compensatory damages for economic losses, reputational harm, emotional distress, and other injuries suffered by Plaintiff in an amount to be determined at trial;
b. Punitive damages against individual Defendants for their malicious, reckless, and bad-faith conduct;
c. Declaratory relief stating that Defendants' actions violated Plaintiff's rights under Title IX, the First and Fourteenth Amendments, 42 U.S.C. § 1983, and Michigan common law;
d. Injunctive relief requiring Defendants to cease retaliation and harassment against Plaintiff;
e. An order requiring Defendant MSU to comply with its Assurances of Compliance filed with the U.S. Department of Education, including obligations to protect complainants from retaliation, safeguard confidentiality, and maintain effective grievance procedures as a condition of federal funding;
f. Reinstatement of Plaintiff's professional opportunities and business relationships where feasible, or damages in lieu thereof;
g. Pre-judgment and post-judgment interest as allowed by law;
h. An award of reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable

provisions of law;

i. Such other and further relief as the Court deems just and proper.

_____

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

_____

Respectfully submitted,

Dated: September 19, 2025

**/s/ Karen Truszkowski**
Karen Truszkowski (P56929)
TEMPERANCE LEGAL GROUP
Attorney for Plaintiff
503 Mall Court #131
Lansing, MI 48912
Tel: 844.534.2560
Email: karen@temperancelegalgroup.com