**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRENDA TRACY,
Plaintiff,

v.

BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY, REMA VASSAR,
DENNIS DENNO, and DOE
DEFENDANTS 1–10,

Defendants.

Case No. 1:25-cv-00614

Hon. Paul L. Maloney
Hon. Maarten Vermaat

---

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

---

**INTRODUCTION**

Plaintiff Brenda Tracy reported sexual misconduct through Michigan State University's Office for Institutional Equity ("OIE") and participated fully in the University's investigation. The Corrected Amended Complaint alleges that after Plaintiff reported that misconduct, Defendants mishandled confidential investigative information, inserted a donor-affiliated lawyer into OIE communications without transparent notice to Plaintiff, tolerated conflicts of interest, failed to safeguard confidentiality, and later amplified disparaging rhetoric after litigation began. (Compl. ¶¶ 25, 48–53, 106–114.)

These allegations are not abstract. The Complaint identifies specific actors, communications, and institutional decisions demonstrating how confidential investigative

materials circulated beyond the investigative team and how Plaintiff's identity and counsel's confidential draft statement were later leaked from a limited insider group. (Compl. ¶¶ 61–70.)

The pleading further alleges that MSU's Office of General Counsel copied donor-affiliated attorney David Zacks on OIE communications regarding Plaintiff's complaint while Plaintiff and her counsel were excluded. (Compl. ¶¶ 25, 48–53.) It also alleges that Board Chair Rema Vassar traveled on a donor's private jet the day after Tucker's OIE interview despite prior written ethics guidance warning trustees that such travel created the appearance of donor influence. (Compl. ¶¶ 55–59.)

The Complaint also pleads a defined disclosure pathway. Plaintiff's identity was leaked in September 2023. Shortly thereafter Plaintiff's counsel sent MSU's General Counsel a confidential draft statement that was forwarded to a limited group of insiders and then leaked to the press. (Compl. ¶¶ 61–70.) Jones Day later confirmed the leak and narrowed potential sources to the twelve insiders who received the draft from MSU's General Counsel. (Compl. ¶¶ 84–96.)

At the Rule 12 stage, the Court must accept these factual allegations as true and draw reasonable inferences in Plaintiff's favor. Defendants' motion instead asks the Court to fragment the Complaint, disregard specific allegations about access, conflicts, timing, and harm, and resolve disputed inferences in Defendants' favor. Rule 12(b)(6) does not permit that result.

## FACTUAL BACKGROUND

Plaintiff alleges that she provided sexual-misconduct prevention programming to MSU as a vendor, that Mel Tucker engaged in sexual misconduct during an April 28, 2022, phone call, that Tucker later made a threatening call concerning Plaintiff's reputation, and that Plaintiff reported the conduct to MSU and then filed a formal RVSM/Title IX complaint through OIE. The University investigated, conducted extensive interviews, and found Tucker responsible for policy violations before denying his appeal.

The Complaint alleges that donor influence and undisclosed insertion of donor-affiliated counsel infected the process from the outset. It specifically pleads that, on January 4, 2023, David Zacks introduced himself to the OIE investigator as part of Tucker's legal team; that, on or about January 5, 2023, Tucker's side asked OIE to route Tucker-related communications to Zacks and co-counsel; and that Brian Quinn was copied on those communications while Plaintiff and her counsel were not. The Complaint alleges MSU never provided transparent notice that a

donor-affiliated lawyer had been inserted into confidential OIE communications and never implemented safeguards to preserve impartiality.

The Complaint also pleads facts supporting an inference of donor-related influence in March 2023. It alleges that, twelve days before the New York trip, OGC warned trustees in writing that accepting donor-provided private-jet flights to MSU events created the appearance of influence unless the trustee paid fair market value. It then alleges that, on March 23, 2023, one day after Tucker's OIE interview, Board Chair Vassar nevertheless accepted travel on a donor's private jet to the MSU–Kansas State game at Madison Square Garden and that Tucker was also on that donor's jet. The Complaint alleges Miller & Chevalier later found this conduct violated Board ethics and conflict-of-interest rules.

As to the disclosure pathway, the Complaint alleges that Plaintiff's identity was leaked to the press on September 8, 2023, after confidential information circulated among MSU administration, trustees, donors, and others. It further alleges that Plaintiff's counsel sent Quinn a confidential draft statement on September 10, 2023, and that the draft statement was then leaked to the media. The Complaint pleads that Jones Day investigated the leak, confirmed that Plaintiff's counsel's confidential draft statement had been leaked, and narrowed the likely sources to the twelve individuals to whom Quinn forwarded the draft. The Complaint also alleges that trustee Denno declined interviews and refused voluntary inspection of his personal device while seven of eight trustees cooperated.

The pleading goes further. It alleges that Jones Day, after conducting the outside leak review, later appeared as litigation counsel for MSU in this case. According to the Complaint, that investigator-to-advocate shift compromises the apparent independence of the leak review, places Jones Day in a witness-advocate posture on central issues and supports an inference that MSU tolerated insider misconduct rather than addressing it. It also alleges that, after Defendants filed motions to dismiss, MSU's Communications Office referred reporters to those filings and distributed links and quotes to media outlets, thereby amplifying disparaging rhetoric beyond communications necessary to litigation.

Plaintiff also pleads concrete injury. She alleges that her work ceased after the leak period in September 2023; that September 13, 2023, was her last day performing comparable nonprofit appearances; that she has had no comparable requests for speaking engagements since

then; and that her nonprofit later collapsed. These allegations are not legal conclusions. They are concrete factual allegations of economic, reputational, and emotional harm.

Defendants' motion asks the Court to choose Defendants' characterization of disputed events over Plaintiff's well-pleaded account. Rule 12 forbids that move. The Court must accept the Complaint's factual allegations as true, draw reasonable inferences in Plaintiff's favor, and permit the case to proceed where the pleaded facts plausibly support liability.

## LEGAL STANDARD

A complaint survives a motion to dismiss when it contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, accept factual allegations as true, and draw reasonable inferences in the plaintiff's favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court may not resolve factual disputes, weigh competing inferences, or demand evidentiary proof before discovery. *Twombly* and *Iqbal* require factual plausibility, not a mini trial on the pleadings.

The Sixth Circuit applies this standard with rigor in favor of the pleader. *See Fritz v. Charter Township of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (on Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538–39 (6th Cir. 2012) (same).

And the pleading burden remains one of plausibility, not proof. *Keys v. Humana, Inc.*, 684 F.3d 605, 608–10 (6th Cir. 2012), cautions that *Twombly* and *Iqbal* do not impose a heightened fact-pleading requirement; a plaintiff need only allege enough factual matter to raise a reasonable expectation that discovery will reveal supporting evidence. Whereas here, the Complaint identifies the actors with access to the confidential materials, the pathway by which those materials moved, and the concrete harm that followed, Rule 12 does not permit dismissal merely because Defendants offer competing explanations.

## ARGUMENT

### I. The Complaint Plausibly Alleges Title IX Retaliation.

Title IX prohibits retaliation against a person because she complained of sex discrimination or participated in a sex-discrimination proceeding. *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173–74 (2005). To plead retaliation, Plaintiff must plausibly allege protected activity, knowledge, a materially adverse action, and causation. At this stage, she has done so.

First, the Complaint plausibly alleges protected activity. Plaintiff reported sexual misconduct through MSU's process and participated in the investigation. Reporting sexual harassment and cooperating in an institutional process fall within the core of activity protected by Jackson. Defendants argue that Plaintiff did not accuse MSU itself of discrimination, but Jackson rejects such cramped framing. The relevant question is whether Plaintiff engaged in activity protected by Title IX. She did.

Defendants' reliance on *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244 (6th Cir. 2023), does not change that result. *Goldblum* involved a Title IX coordinator's unauthorized public letter that, in the Sixth Circuit's view, did not specifically accuse the university of intentional sex discrimination and did not provide notice to an official authorized to institute corrective measures on the recipient's behalf. *Id*. at 251–53. Plaintiff alleges the opposite here: she reported Tucker's conduct directly to MSU's General Counsel, filed a formal RVSM/Title IX complaint with OIE, requested confidentiality and non-retaliation protection, and then participated in the University's formal investigative and adjudicative process. On those pleaded facts, MSU had notice through the very institutional actors empowered to act.

Second, the Complaint plausibly alleges adverse action. In the retaliation context, the question is whether the defendant's conduct would deter a reasonable person from engaging in protected activity. See, e.g., *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff alleges that confidential information from a sexual-misconduct investigation was circulated beyond the investigative team; that a donor-affiliated lawyer was inserted into OIE communications without transparent notice to Plaintiff; that Plaintiff's identity and counsel's confidential draft statement were leaked from a small group of insiders; that false accusations

about Plaintiff circulated publicly without correction; that MSU's Communications Office later referred reporters to disparaging filings and amplified those themes; and that the net effect was reputational ruin, lost engagements, and collapse of Plaintiff's nonprofit. A reasonable survivor could plainly be deterred by such treatment. The Sixth Circuit likewise recognizes that institutional actions that chill reporting of sexual misconduct may constitute actionable retaliation. *Doe v. Miami Univ.*, 882 F.3d 579, 589–90 (6th Cir. 2018).

Nor does *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315 (6th Cir. 2017), assist Defendants. Gordon was an unpublished summary-judgment decision sorting relatively minor school responses such as an internal memo, extra tutoring, and a suggestion that the student stay home for a few days from actions that could qualify as materially adverse. *Id.* at 321-22. Plaintiff alleges something far more serious: disclosure of confidential sexual-misconduct information, leaks from a limited insider group, institutional amplification of disparaging themes, and resulting collapse of her work and nonprofit. Those allegations readily clear the pleading threshold for materially adverse action.

Defendants insist the alleged conduct was not "school-related" because some harm occurred after Plaintiff's formal participation ended. But the pleaded conduct remained institutional at every step. The alleged disclosures arose from OIE and OGC communications; the limited source pool was defined by Quinn's forwarding of Plaintiff's confidential draft statement; the donor-affiliated lawyer was inserted into OIE communications; the communications activity was allegedly conducted by MSU's own Communications Office; and the pleaded harms flowed from the University's handling of Plaintiff's report and the information generated by that process. The pleading therefore supports a plausible inference that the adverse actions were school related in the sense relevant to Title IX.

Third, the Complaint plausibly alleges causation. It alleges that the harmful conduct occurred after Plaintiff reported misconduct and cooperated in the investigation, that the leaked materials were products of that process, and that the adverse treatment was aimed at Plaintiff because she reported and persisted. Temporal sequence alone is not the only basis for causation here. Plaintiff also pleads motive-enhancing facts: the undisclosed insertion of donor-affiliated counsel; the donor-jet trip one day after Tucker's OIE interview despite prior ethics guidance; the narrow insider group that received the confidential draft statement; the leak review's

identification of that small source pool; Denno's refusal to cooperate; and the later use of outside communications to amplify disparaging litigation rhetoric. Taken together, those allegations plausibly support causation.

Defendants' reliance on the litigation privilege does not warrant dismissal of the Title IX retaliation claim. Plaintiff's theory is not that the mere filing of a motion to dismiss is actionable. Her theory is that Defendants and their agents engaged in extra-judicial republication and institutional amplification of disparaging themes through MSU's Communications Office and controlled channels, beyond what was necessary to defend the case. The Complaint expressly distinguishes between court filings and extra-judicial republication. Whether the challenged conduct stayed within the scope of privilege is fact-bound and cannot be resolved on the face of the pleading where Plaintiff alleges conduct beyond protected litigation activity.

## II. The Complaint Plausibly Alleges Title IX Deliberate Indifference.

Defendants argue that *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613 (6th Cir. 2019), bars Count II because Plaintiff did not plead "further sexual harassment." But *Kollaritsch* does not authorize an institution to mishandle confidential investigative information, tolerate conflicts of interest, or expose a complainant to retaliation through its own processes. The deliberate indifference claim here is based on the University's allegedly clearly unreasonable response to known risks arising from the handling of Plaintiff's report and the investigation it generated.

Defendants' reliance on *Kollaritsch* is misplaced. *Kollaritsch* addressed a deliberate-indifference claim arising from student-on-student harassment and held that liability requires further actionable harassment after the university's response. *Id*. at 620–22. This case involves a different theory of injury. Plaintiff alleges institutional conduct occurring after her report of sexual misconduct, including the circulation and disclosure of confidential investigative materials, and resulting in reputational harm. Moreover, Plaintiff's retaliation claim arises under *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), which recognizes retaliation against a person who reports sex discrimination as intentional discrimination under Title IX. *Kollaritsch* does not address retaliation claims and therefore does not control the analysis here.

Defendants' reading of *Kollaritsch* is also too broad. *Kollaritsch* involved student-on-student harassment and framed its holding in that context. *Kollaritsch* at 619, 621, 623. The Sixth Circuit later made explicit in *Wamer v. Univ. of Toledo*, 27 F.4th 461, 469–72 (6th Cir. 2022), that the *Kollaritsch* test is not applicable to teacher-student harassment claims and that *Kollaritsch* used careful language cabining itself to peer-harassment cases. Plaintiff alleges harassment by an MSU employee and then post-report institutional misconduct by MSU itself, including the handling and dissemination of confidential process information. That is not the same doctrinal posture as *Kollaritsch*.

The Complaint pleads several specific facts that support a clearly-unreasonable-response theory: MSU allegedly inserted a donor-affiliated lawyer into confidential OIE communications from the outset without transparent notice to Plaintiff; failed to implement impartiality safeguards; permitted confidential communications to circulate outside the investigative team; failed to prevent or contain leaks of Plaintiff's identity and Plaintiff's counsel's confidential draft statement; and later retained as litigation counsel the same firm that investigated the leak and identified insider misconduct issues. It also alleges that MSU sought mediation, delayed it for roughly fourteen months, and then pivoted to adversarial litigation while known reputational harms and threats were mounting.

The Complaint further alleges that University representatives discussed mediation and a public statement acknowledging Plaintiff's report. Those allegations, taken as true at this stage, support Plaintiff's promissory estoppel theory and reinforce the plausibility of the claims.

Those allegations distinguish this case from *Kollaritsch.* Plaintiff does not merely allege dissatisfaction with the outcome of a disciplinary process. She alleges that MSU's own response to her report and to the confidentiality risks surrounding it was infected by undisclosed conflicts, insider circulation, a narrowed but uncorrected leak pathway, and a later investigator-to-advocate conflict. At the pleading stage, that is enough to state a deliberate-indifference claim.

Defendants also argue that Plaintiff has not pleaded a cognizable Title IX injury because she was not a student deprived of educational opportunities. But the Complaint alleges Plaintiff was participating in MSU's operations as a vendor providing prevention programming to students, athletes, coaches, and staff; that the harassment and retaliation arose from and interfered with that participation; and that MSU's actions deprived her of access to MSU-related

opportunities and caused concrete reputational, economic, and emotional harm. Whether Plaintiff proves the scope of recoverable Title IX injury is not a Rule 12 question.

To the extent Defendants cite *Cummings v. Premier Rehab Keller, P.L.L.C.,* 596 U.S. 212 (2022), to limit emotional-distress damages, that argument does not defeat the claim itself. Even if certain categories of damages are limited, the existence or measure of damages is not a basis to dismiss a plausibly pleaded cause of action where the Complaint also seeks compensatory relief for economic and reputational harm, injunctive relief, and other remedies.

### III. The Complaint Plausibly Alleges Informational-Privacy Violations Under § 1983.

The Sixth Circuit recognizes a constitutional privacy interest in highly sensitive information in at least two relevant settings: when disclosure creates a serious risk of bodily harm and when the information is sexual, personal, and humiliating. *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1061–64 (6th Cir. 1998); *Bloch v. Ribar*, 156 F.3d 673, 684–86 (6th Cir. 1998). Information tied to a confidential sexual-misconduct investigation falls within the kind of intensely personal material protected by *Bloch*.

*DeSanti* does not require dismissal. *J.P. v. DeSanti,* 653 F.2d 1080 (6th Cir. 1981), rejected a free-floating constitutional right to nondisclosure of all personal information, but later Sixth Circuit cases recognize a protected informational-privacy interest where disclosure concerns information of a sexual, personal, and humiliating nature or creates a serious risk of bodily harm. *Kallstrom*, 136 F.3d at 1061–64; *Bloch*, 156 F.3d at 684-86. Plaintiff's allegations fall in the former category.

*Annabel* is likewise distinguishable. *Annabel #414234 v. Mich. Dep't of Corr*., No. 1:16-cv-543, 2018 WL 3455407, at *23 (W.D. Mich. July 18, 2018), involved disclosure of a prisoner's hemorrhoid condition and applied the same narrow Sixth Circuit framework to reject a claim outside the sexual/personal/humiliating category. Plaintiff alleges disclosure of information arising from a confidential sexual-misconduct investigation, including complainant identity and sensitive communications, followed by threats and severe reputational harm. That alleged disclosure is far closer to *Bloch* than to *Annabel*.

The Complaint pleads more than labels. It alleges that Defendants disclosed or facilitated disclosure of identity information and sensitive communications connected to Plaintiff's sexual-

misconduct report and the University process; that Quinn forwarded Plaintiff's counsel's confidential draft statement to a limited insider group; that the draft statement was then leaked; that Jones Day later confirmed the leak and narrowed the likely sources to the twelve insiders who had received the draft from Quinn; and that at least one trustee refused cooperation in the review. Those factual allegations support the inference that the disclosure pathway was internal and state connected.

Defendants respond that Plaintiff herself has spoken publicly about some aspects of the Tucker matter. That does not defeat the claim on the pleadings. A victim's later public response to a leak is not the same as voluntary public waiver of all confidentiality interests in the sensitive information leaked from an institutional process. *Bloch* itself recognizes that forced exposure of sexual and humiliating details can implicate constitutional privacy. The Complaint alleges Plaintiff spoke publicly only after her identity was disclosed and to protect herself against rumor and inaccuracy. Accepting those allegations as true, the pleading does not establish waiver as a matter of law.

Nor is dismissal warranted because Plaintiff cannot yet identify the precise individual who pressed "send" or spoke to the press. The Complaint identifies the limited insider group with access to the confidential draft statement, alleges the leak came from within that group, and alleges enough facts to tie the conduct to officials acting under color of state law. Discovery is the proper mechanism to determine which insiders, acting individually or in concert, were responsible.

## IV. The Complaint Plausibly Alleges First Amendment Retaliation and Related Conspiracy.

Plaintiff alleges that she engaged in protected speech and petitioning by reporting misconduct, cooperating with OIE, and filing suit. She further alleges that, after Defendants filed their motions, MSU's Communications Office referred reporters to those filings, distributed links and quotes to media outlets, routed or posted talking points on MSU-controlled channels, and amplified disparaging characterizations of Plaintiff beyond what was necessary for litigation. Those allegations support a plausible claim that state actors used media-oriented tactics to punish and deter protected activity.

Defendants argue that referring reporters to public filings can never constitute adverse action. That is too categorical. The Complaint does not rest on the bare existence of public filings. It pleads extra-judicial amplification through university communications channels and discussions with reporters designed to stimulate coverage and magnify disparagement. Whether those actions would deter a person of ordinary firmness is at least a fact question and should not be foreclosed on the pleadings.

The conspiracy counts are also plausibly pleaded. Plaintiff alleges a limited universe of insiders and aligned actors with access to confidential information, the overt acts of leaking the confidential draft statement, refusing cooperation with the leak review, routing and amplifying disparaging materials beyond the litigation context, and using institutional channels to increase public harm. The Complaint need not prove the conspiracy now; it must only plead enough facts to make an agreement or concerted action plausible. The pleaded access pathways, overlapping roles, timing, and coordinated amplification do that. The intracorporate-conspiracy doctrine does not compel dismissal at this stage because the Complaint alleges concerted conduct with private actors and conduct undertaken for personal, political, or reputational purposes outside any legitimate common institutional objective.

### V. The State-Law Claims Are Plausibly Pleaded.

Defendants contend the state-law counts fail because Plaintiff supposedly does not identify enough detail. The Complaint, however, alleges concrete facts that support each claim. For defamation, it pleads that false allegations circulated that Plaintiff's counsel colluded with the Board and demanded money from Quinn, that those accusations were public, and that Defendants' silence and later amplification increased the harm. At the pleading stage, that is enough to put Defendants on notice of the challenged defamatory themes and the manner of publication.

For **public disclosure of private facts**, the Complaint alleges that Defendants publicized private information tied to the MSU investigation process, including identity information and sensitive communications, and that the disclosure was highly offensive and not justified by a legitimate public interest. Where the sensitive information comes from a confidential sexual misconduct investigation, those allegations are sufficient to state the claim. Whether every disclosed item was newsworthy or privileged is a merits issue, not a pleading defect.

For **tortious interference**, Plaintiff alleges specific categories of business relationships and expectancies with donors, sponsors, and educational institutions for speaking engagements and nonprofit activities; alleges Defendants knew of those relationships; and alleges that leaks, disparagement, and media routing caused their loss. At this stage, she is not required to prove each lost engagement with evidentiary detail before discovery. The pleading gives a concrete account of the relationships, the interference mechanism, and the resulting economic collapse.

For **promissory estoppel**, the Complaint alleges that MSU, through OGC, sought pre-litigation mediation, that Plaintiff agreed to defer litigation and public steps in reliance on that assurance, that MSU delayed mediation for approximately fourteen months, and that it then pivoted to adversarial litigation led by outside counsel. Whether those facts amount to a sufficiently clear promise and reasonable reliance cannot be decided in Defendants' favor on a motion to dismiss. Plaintiff's allegation is not merely that mediation was discussed in the abstract; it is that MSU sought it, induced forbearance, then abandoned it after delay.

The **Michigan civil-conspiracy** and **concert-of-action** claim likewise survives because the Complaint pleads concerted conduct, overt acts, and underlying tortious conduct. The same factual allegations that support the federal conspiracy theory support the Michigan claim: the limited insider distribution of confidential material, the leak, the refusal to cooperate with the leak review, the use of media routing and extra-judicial republication, and the resulting economic and reputational damage.

## VI. Immunity Defenses Do Not Warrant Dismissal at the Pleading Stage.

Defendants' immunity arguments do not justify dismissal of the Complaint in its entirety. As Defendants acknowledge, Title IX claims may proceed against the funding recipient. The Complaint also seeks prospective injunctive relief against the appropriate individual defendants in their official capacities, which is the classic *Ex parte Young* pathway for ongoing federal-law violations. To the extent Defendants contend every official-capacity claim is barred, that argument overlooks the well-established exception for prospective relief.

Qualified immunity likewise does not resolve the § 1983 counts on the pleadings where the Complaint alleges violations of clearly established rights to be free from retaliation for protected speech and to maintain confidentiality in intensely personal sexual information, and

where the factual questions about who disclosed what, through which channels, and for what purpose remain disputed. Courts routinely decline to grant qualified immunity at the motion-to-dismiss stage when the defense depends on versions of disputed facts the complaint does not accept.

State-law immunity does not require dismissal either. The Complaint expressly alleges that Defendants acted outside legitimate authority, for media-oriented, personal, political, or reputational purposes, and with malice or bad faith. It further alleges extra-judicial dissemination of sensitive material and misuse of confidential information. Those allegations are sufficient, at the pleading stage, to put bad-faith and ultra vires conduct in issue and to preclude blanket immunity dismissal before discovery.

## **CONCLUSION**

The Corrected Amended Complaint presents a coherent and factually supported narrative. Plaintiff reported sexual misconduct through MSU's process. Confidential investigative communications were expanded beyond the investigative team. A donor-affiliated lawyer was inserted into OIE communications without transparent notice. Plaintiff's identity and counsel's confidential draft statement were leaked from a narrow insider group. The same firm that investigated the leak now appears as litigation counsel for the institution implicated by that investigation. (Compl. ¶¶ 25–30, 48–53, 61–70, 84–96.)

Plaintiff further alleges that Defendants amplified disparaging rhetoric through extra-judicial communications while Plaintiff's professional livelihood collapsed. (Compl. ¶¶ 106–128.)

At the pleading stage, these allegations must be accepted as true and all reasonable inferences drawn in Plaintiff's favor. Defendants' motion asks the Court to disregard pleaded facts, isolate individual allegations, and resolve competing inferences in Defendants' favor. Rule 12(b)(6) does not permit that approach.

Because the Complaint plausibly alleges retaliation, deliberate indifference, constitutional violations, and related state-law torts arising from Defendants' handling of Plaintiff's report and confidential investigative information, Defendants' Motion to Dismiss must be denied.

Dated: March 13, 2026

Respectfully submitted,

*By: /s/ Karen Truszkowski*
Karen Truszkowski (P56929)
**TEMPERANCE LEGAL GROUP**
Attorney for Plaintiff
503 Mall Court #131
Lansing, MI 48912
(844) 534-2560
karen@temperancelegalgroup.com

---

I certify that on March 13, 2026, I electronically filed the foregoing Plaintiff's Response in Opposition to Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: March 13, 2026

*By: /s/ Karen Truszkowski*
Karen Truszkowski
Attorney for Plaintiff