UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENDA TRACY, | ) | |
|      Plaintiff, | ) | |
| | ) | No. 1:25-cv-614 |
| v. | ) | |
| | ) | |
| | ) | Honorable Paul L. Maloney |
| BOARD OF TRUSTEES OF MICHIGAN STATE | ) | |
| UNIVERSITY, *et al.*, | ) | |
|      Defendants. | ) | |
| | ) | |

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants' motion to dismiss. (ECF No. 30).[1] Plaintiff alleges numerous claims against Defendants related to the aftermath of her report of sexual misconduct by a former MSU employee. She alleges that Defendants failed to safeguard her information during the investigation, did not reasonably respond to her report, and publicly disparaged her, among other allegations. But Plaintiff fails to connect the dots from her factual allegations to the necessary elements of her legal claims, an outcome made almost inevitable by the failure to cite the complaint a single time in the argument section of her response brief. Plaintiff also fails to rebut the immunity defenses Defendants raise, citing neither specific allegations in the complaint nor any legal authority. Defendants' motion will thus be granted.

---

[1] The motion is from each *named* Defendant: the Board of Trustees of Michigan State University, Dennis Denno, and Rema Vassar. Plaintiff's amended complaint also names ten unknown parties as Defendants, five "believed to be MSU officials or employees," (ECF No. 13 at PageID.143 ¶ 15), and five "private actors who acted in concert with state actors to further the conspiracies and torts alleged herein," (*id.* ¶ 16). These unknown parties have not been identified or served, and named Defendants' counsel does not claim to represent them or move on their behalf. (*See* ECF No. 30 at PageID.455). The Court will use "Defendants" to refer to the named, moving Defendants unless otherwise specified.

## I.

Motions to dismiss for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" to plausibly suggest that the plaintiff is entitled to the relief requested. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts "merely consistent with" the defendant's liability suggest only possibility, not plausibility, and thus fail this test. *Id.* In assessing whether the complaint contains sufficient factual matter, courts need only accept factual allegations as true and not legal conclusions or unwarranted inferences. *Kottmayer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

## II.

Plaintiff, Brenda Tracy, "provided sexual-misconduct prevention programming to MSU as a vendor." (ECF No. 13 at PageID.145 ¶ 32). On April 28, 2022, Plaintiff was subjected to sexual misconduct by Mel Tucker, a former football coach for Michigan State University ("MSU"). (*Id.* ¶ 33). Plaintiff reported Tucker's misconduct to MSU's Office of the General Counsel in November of that year, (*id.* ¶ 36), and filed a formal RVSM/Title IX complaint with MSU's Office of Institutional Equity that December, (*id.* ¶ 37). Plaintiff alleges that counsel affiliated with an MSU donor was given access to communications regarding the investigation of her complaint without her knowledge. (*See id.* at PageID.145-47 ¶¶ 46-60). She also alleges that Defendants, MSU's Board of Trustees and two individual trustees, Dennis Denno and Rema Vassar, among other MSU-affiliated and private individuals, form the small pool of entities possibly responsible for the leak of her identity as the complainant against Tucker to the press. (*Id.* at PageID.147-48 ¶¶ 61-72). The leak of

2

Plaintiff's identity had severe consequences for her career and resulted in increased harassment and threats directed against her. (*Id.* at PageID.151-52 ¶¶ 121-29).

Afterward, in October of 2023, MSU found Tucker responsible for policy violations, (*id.* at PageID.145 ¶ 44), and in January of 2024, his appeal was denied, (*id.* ¶ 45). While the investigation was ongoing, in March of 2023, MSU's Office of the General Counsel asked Plaintiff if she was interested in mediation. (*Id.* at PageID.151 ¶ 115). Plaintiff was, (*id.* ¶ 116), but MSU failed to schedule mediation for 14 months after the initial approach, (*id.* ¶ 117). Plaintiff filed her initial complaint in this case on June 3, 2025. (ECF No. 1). Defendants moved to dismiss that complaint, (ECF No. 7), and filed a brief in support, (ECF No. 8). Plaintiff, in the amended complaint filed on September 23, 2025, alleges that Defendants' brief in support of their motion contains "disparaging characterizations of Plaintiff and her motives" and comparisons between herself and Tucker, and that Defendants deliberately sought to increase media attention to their motion. (ECF No. 13 at PageID.150 ¶¶ 106-14). Defendants timely filed their motion to dismiss the amended complaint on February 20, 2026. (ECF No. 30).

## III.

### A. Title IX Retaliation

Plaintiff alleges a claim of Title IX retaliation against the Board of Trustees. To adequately state this claim, Plaintiff must allege that "(1) she engaged in protected activity, (2) the funding recipient knew of the protected activity, (3) she suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action." *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020) (citation modified). To create Title

IX liability for an institution, an individual's retaliatory actions must be "taken at the behest of the institution." *Doe v. Univ. of Ky.*, 111 F.4th 705, 721 (6th Cir. 2024).

But first, a note about the litigation privilege. Both parties seem to believe it applies to this claim. (*See* ECF No. 31 at PageID.471; ECF No. 33 at PageID.507). Defendant argues the privilege bars the claim, while Plaintiff argues that the privilege does not apply because Defendants "engaged in extra-judicial republication and institutional amplification" and Plaintiff took great pains to "expressly distinguish[] between court filings and extra-judicial republication." (ECF No. 33 at PageID.507). But it is not clear that such a privilege applies to this claim at all.

The litigation privilege is a creature of state law that provides absolute immunity *from defamation claims* to "judges, attorneys, and witnesses during the courts of judicial proceedings" if their statements "are relevant, material, or pertinent to the issue being tried." *Oesterle v. Wallace*, 725 N.W.2d 470, 474 (Mich. Ct. App. 2006). It is a "privilege" insofar as making "an unprivileged communication to a third party" is an element of defamation in Michigan. *Id.* Privilege law in this context developed because "the public good requires that a person be freed from liability for the publication of a statement that would otherwise be defamatory" during court proceedings. *Id.* On its face, it is not clear that this privilege would apply to retaliation claims, and it is certainly not clear that this state law defamation rule would apply to a federal claim under Title IX.

The Court finds that the Michigan litigation privilege in defamation cases does not apply to a retaliation claim under Title IX. Other district courts in this circuit, and other courts across the country, have found that state law litigation privileges do not apply to federal

causes of action. *See, e.g., Rosania v. Taco Bell of Am., Inc.*, 303 F. Supp. 2d 878, 888-89 (N.D. Ohio 2004); *Suchite v. Kleppin*, 819 F. Supp. 2d 1284, 1292-93 (S.D. Fla. 2011); *EEOC v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 197-98 (D. Conn. 2017); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). In the Sixth Circuit, Title IX retaliation claims use analogous elements to a Title VII retaliation claim, *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 251 (6th Cir. 2023), so the Seventh Circuit's analysis in *Steffes* regarding a Title VII claim is particularly persuasive. The court held that a "state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action," and concluded that any parallel federal common law privilege based on it "could interfere with the policies underlying the anti-retaliation provisions of Title VII and the ADA." *Steffes*, 144 F.3d at 1074-75. The court noted that "some actions taken in the course of litigation could conceivably constitute retaliation" under Title VII, so an "absolute litigation privilege" would be too broad. *Id.* at 1075. This Court agrees and finds the same policy concerns apply in the Title IX context, so it will not consider a litigation privilege as a bar to Plaintiff's Title IX retaliation claim.

Turning to the elements of the retaliation claim, the Court will assume that Plaintiff adequately pleads protected activity in reporting Tucker's misconduct.[2] Plaintiff's theories of adverse action and causation, though, fail. Before going through each theory, the Court notes that Plaintiff's briefing does her no favors on this front. The section on retaliation does not

---

[2] In Plaintiff's complaint, she alleges that "seeking relief from this Court" constituted protected activity for the purpose of the Title IX retaliation claim, (ECF No. 13 at PageID.153 ¶ 146), but in her briefing only refers to reporting Tucker's misconduct and participating in the investigation as protected activity, (ECF No. 33 at PageID.505). The Court will assume that Plaintiff's theories rely only on her report and participation in the investigation being protected activity, consistent with her briefing.

cite the complaint at all, (ECF No. 33 at PageID.505-07), and as sole support for her claim that Defendants' actions were adverse, cites *Doe v. Miami University*, 882 F.3d 579, 589-90 (6th Cir. 2018), despite that case not involving a retaliation claim or any discussion of the concept of adverse action. The Court is thus left to its own devices to connect Plaintiff's assertions to allegations in the complaint, determine if those allegations constitute adverse action, and determine if any adverse actions are plausibly alleged to have been caused by her protected activity.

In the complaint, Plaintiff includes three factual allegations under the heading of the Title IX retaliation claim. (*See* ECF No. 13 at PageID.153 ¶¶ 150-52). First, she alleges MSU engaged in "extra-judicial republication of disparaging content through its Communications Office after filing motions to dismiss." (*Id.* ¶ 150). Second, she alleges that on September 2, 2025, "MSU referred reporters to Defendants' disparaging filings." (*Id.* ¶ 151). Third, she alleges that MSU "abandon[ed]" mediation efforts and "escalat[ed]" to "adversarial tactics." (*Id.* ¶ 152). These allegations are supported with additional detail earlier in the complaint, under the "Retaliatory litigation rhetoric" subheading. (*Id.* at PageID.150 ¶¶ 106-14).

The first two theories are essentially the same: the argument is that MSU made disparaging statements in its court filings and brought public attention to them. But Plaintiff does not identify any particular statements in Defendant's filings. She alleges that Defendants "compare[d]" her to Mel Tucker and insinuated that she "was on the same 'level'" as he was, (*id.* ¶ 106), and that Defendants "portrayed Plaintiff as despicable and suggested parity between Plaintiff and Tucker," (*id.* ¶ 112). Presumably, these are references to the introduction to Defendants' motion to dismiss the initial complaint. (ECF No. 8 at

6

PageID.87). On that page, Defendants argue that "[l]ike Tucker . . . [Plaintiff] brings a 50+-page, kitchen-sink complaint" and that "[Plaintiff], like Tucker, fails to state a claim." (*Id.*). The comparisons are solely stated in terms of litigation tactics. It is unclear how any reader could come away with the impression that Defendants were making an argument about moral equivalency, especially when the introductory paragraph explicitly refers to MSU's firing of Tucker "for engaging in inappropriate sexual behavior with [Plaintiff]." (*Id.*). That introductory paragraph does position Tucker as saying MSU "did too much" and Plaintiff as saying MSU "did too little," (*id.*), but again, that comparison is in litigation tactics rather than moral equivalency of Tucker's misconduct to anything Plaintiff did. A reasonable person would not be dissuaded from reporting misconduct by the prospect of an institution criticizing their litigation tactics in court filings years later. *See Savignac v. Jones Day*, 754 F. Supp. 3d 135, 218 (D.D.C. 2024) (concluding that no reasonable person would be dissuaded from reporting misconduct because another party might raise defenses and relay its own "version of the relevant events"); *Mitchell v. Ohio State Univ.*, No. 2:19-cv-4162, 2020 WL 5250459, at \*6 (S.D. Ohio Sep. 3, 2020) ("To establish causation in a Title IX retaliation case, the time gap between the protected activity and the retaliatory act cannot be years in length.").

Plaintiff's theory that Defendants' mediation conduct is adverse also lacks support. Plaintiff does not explain how a reasonable person could be dissuaded from reporting misconduct by the prospect that the institution might eventually withdraw from mediation efforts. Going into the mediation process, reasonable people would understand that the

parties have differing views and goals and that litigation may become necessary. This theory of adverse action thus also fails.

Plaintiff gestures toward other theories of adverse action in her brief, but these would fare no better. First, she references allegations that her identity and her counsel's draft statement were leaked to the press. (ECF No. 33 at PageID.505). Her Title IX retaliation claim is brought only against the Board of Trustees, and the allegations in her complaint do not suggest that these leaks were "at the behest of the institution." *Univ. of Ky.*, 111 F.4th at 721. Plaintiff's allegations allow the inference that Defendant Denno leaked the information, (*see* ECF No. 13 at PageID.147-48 ¶¶ 68-71), but establish no basis for concluding that he did so at MSU's behest. Plaintiff next references "false accusations about Plaintiff" that "circulated publicly without correction." (ECF No. 33 at PageID.505-06). But Plaintiff identifies no authority indicating that anything but zealous, affirmative advocacy on her behalf in the face of false rumors would be adverse. Reasonable people would not be dissuaded from reporting misconduct by mere inaction in these circumstances. Any dissuasive effect would be from the rumors themselves, not Defendants' inaction. Next, Plaintiff refers to "disparaging filings" and amplification of the "themes" in those filings. (*Id.* at PageID.506). The Court has already discussed and rejected this theory related to Defendants' motion to dismiss the initial complaint.

None of the actions Plaintiff identifies were done at MSU's behest, capable of deterring a reasonable person from reporting misconduct, *and* plausibly alleged to be caused by Plaintiff's reporting of misconduct. Plaintiff thus cannot satisfy both the adverse action

and causation elements for any theory she puts forth, even if she satisfies the protected activity element. Defendants' motion as to the Title IX retaliation claim will thus be granted.

### B.  Title IX Deliberate Indifference

Plaintiff alleges a claim of Title IX deliberate indifference against the Board of Trustees. The parties disagree over the legal framework for this claim. Defendants cite the test from *Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613, 623-24 (6th Cir. 2019), while Plaintiff cites *Wamer v. University of Toledo*, 27 F.4th 461, 469-72 (6th Cir. 2022). The *Kollaritsch* test applies in cases of "student-on-student" harassment, 944 F.3d at 623, while the *Wamer* test applies in cases of "teacher-student harassment," 27 F.4th at 471. This case does not cleanly fit in either category, but Plaintiff argues *Wamer* is more appropriate because Tucker engaged in the alleged misconduct as an MSU employee. (*See* ECF No. 33 at PageID.508). The *Kollaritsch* test is more demanding than the *Wamer* test, so if Plaintiff cannot state a claim under *Wamer*, the Court need not resolve which test should apply.

Under *Wamer*, Plaintiff must allege that "(1) she was sexually harassed by a teacher or professor, (2) an official with authority to take corrective action had actual notice of the harassment, (3) the school's response was clearly unreasonable, and (4) the school's deliberate indifference caused her to suffer discrimination." 27 F.4th at 471. The final element of causation requires Plaintiff to allege that "following the school's unreasonable response," she either "experienced an additional instance of harassment" or took "specific reasonable actions to avoid harassment, which deprived the plaintiff of the educational opportunities available to other students" based on "an objectively reasonable fear of further

9

harassment." *Id.* Defendants do not dispute that Plaintiff can meet the first two elements but do dispute that she can meet the latter two of unreasonable response and causation. It is not clear what Plaintiff's theory regarding the causation element *is.*

Plaintiff does not allege an additional instance of harassment,[3] so she must allege that she had a reasonable fear of further harassment and took specific reasonable actions to avoid it which deprived her of opportunities available to others. In her brief, Plaintiff argues that "the harassment and retaliation" interfered with her participation "as a vendor providing prevention programming" and that "MSU's actions deprived her of access to MSU-related opportunities." (ECF No. 33 at PageID.508-09). Plaintiff does not cite any portions of the complaint in the section of argument related to this claim. (*See id.* at PageID.507-09).[4] Critically, she does not explain how these arguments meet the causation test from *Warner*. She does not specify what opportunities she lost out on, or what specific actions she took based on her reasonable fear of further harassment that caused her to lose out on them. The complaint does not appear to fill in these gaps. While Plaintiff describes general harms to her work, reputation, and income, (*see* ECF No. 13 at PageID.151-52 ¶¶ 121-29), she alleges that these harms stemmed "from the disclosure of [her] identity," (*id.* at PageID.151), not from her own actions to avoid further harassment. Plaintiff alleges under the Title IX deliberate indifference heading that "MSU's deliberate indifference deprived Plaintiff of

---

[3] Presumably, this is why she resisted the application of the test from *Kollaritsch*. *See* 944 F.3d at 623 (explaining that plaintiffs must prove "some further incident of actionable sexual harassment").

[4] Plaintiff also makes arguments regarding her retaliation claim, (ECF No. 33 at PageID.507), and the Court has already addressed that claim. To the extent that Plaintiff is gesturing toward any other theory of Title IX liability with this paragraph about retaliation in her brief, it is not sufficiently fleshed out to evaluate. *See Bose*, 947 F.3d at 993; *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (citation modified)).

access to MSU-related opportunities and caused irreparable injury," (ECF No. 13 at PageID.154 ¶ 168), but this allegation is little more than a legal conclusion. It does not provide any detail as to what opportunities she lost or how.

Plaintiff cannot satisfy the causation element of the test she asks the Court to apply, so it follows that she cannot satisfy the more stringent test Defendants request. She thus fails to state a claim regardless of which test applies, even if she alleged that MSU's response to the harassment she experienced was unreasonable. Defendants' motion with regard to Plaintiff's Title IX deliberate indifference claim will thus be granted.

### C. 14th Amendment Information Privacy

Plaintiff alleges a claim for the violation of her constitutional right to information privacy against Defendants Vassar and Denno and against ten unnamed Defendants. (ECF No. 13 at PageID.155 ¶¶ 170-74). There is a constitutional interest in information privacy only when "fundamental liberty interest[s]" are implicated, and the Sixth Circuit has only found those interests are implicated "where the release of personal information could lead to bodily harm" and "where the information released was of a sexual, personal, and humiliating nature." *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008). If the right to information privacy is implicated, then the Court must balance "the government's interest in disseminating the information" against "the individual's interest in keeping the information private." *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998).

Here, Plaintiff has plausibly plead that Defendant Denno violated her constitutional information privacy rights by leaking her identity as the complainant against Tucker to the press. She alleges that her identity was leaked to the press, (ECF No. 13 at PageID.148 ¶ 61),

11

and sufficient facts to infer that Defendant Denno was the source of that leak, (*id.* ¶¶ 65, 69-70). Plaintiff's identity as a complainant alleging sexual misconduct falls within the protected category identified in *Bloch*. The court explained in *Bloch* that "a historic social stigma has attached to victims of sexual violence" and that victims often experience "criticism and scrutiny concerning [their] sexuality and personal choices regarding sex" due to "a tradition of 'blaming the victim.'" 156 F.3d at 685. The court concluded that "information regarding private sexual matters warrants constitutional protection against public dissemination." *Id.* While the holding concerns "intimate details" of a sexual assault, *id.* at 686, the court's rationale sweeps more broadly and suggests that the constitutionally protected interest extends to the fact of a person's experience of nonconsensual sex acts as well. This information is still highly personal and its release potentially subjects people to the same scrutiny and stigma the court identified in *Bloch*. Defendants' argument that *Bloch* is limited to lurid details thus fails.

Defendants also argue that because Plaintiff has addressed Tucker's misconduct in the press, she cannot maintain that her informational privacy rights were violated. But as Plaintiff alleges, her identity as the complainant against Tucker was not public until her name was leaked to the press. (ECF No. 13 at PageID.148 ¶ 61). The case on which Defendants rely for this argument bars constitutional information privacy claims where the information "was *already* in the public realm *at the time of the alleged privacy breach.*" *Jones v. Lacey*, 108 F. Supp. 3d 573, 584 (E.D. Mich. 2015) (emphasis added). Defendants rely on *subsequent* discussions of the topic by Plaintiff. Defendants' argument is that once a plaintiff's privacy rights are violated, they cannot address the newly-public information

12

without losing their cause of action. Defendants have no legal support for that argument, and rightly so, as it would render violators of the Constitution masters of plaintiffs' reputations, at least for the pendency of potentially lengthy litigation. Plaintiff has thus alleged sufficient facts to state a violation of her constitutional information privacy rights.

### D. First Amendment Retaliation

Plaintiff alleges a First Amendment retaliation claim against Defendants Vassar and Denno and against ten unnamed Defendants. (ECF No. 13 at PageID.155). At least, that is what the heading in the complaint indicates; the allegations under that heading apply only to the unnamed Defendants. (*See id.* ¶¶ 175-83). That would be reason enough to grant the motion as to the moving Defendants. But substantively, the only retaliation Plaintiff alleges is in the form of statements in court filings which were then supposedly amplified. (*See* ECF No. 13 at PageID.155 ¶¶ 177-78; ECF No. 33 at PageID.510). The Court has already determined that these allegations are insufficient to state a Title IX retaliation claim because they do not establish an adverse action. The test for adverse action is the same in the First Amendment context. *Compare Mezibov v. Allen,* 411 F.3d 712, 717 (6th Cir. 2005) (defining the elements of a First Amendment retaliation claim as "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct"), *with Univ. of Ky.,* 111 F.4th at 716 ("To determine whether a challenged retaliatory action is 'adverse' for Title IX purposes, we ask whether the action would dissuade a reasonable person from engaging in the protected activity."). The Court thus concludes that Plaintiff

13

would fail to state a claim for First Amendment retaliation for the same reasons, even if she made the allegations against the moving Defendants.

### E.  Defamation

Plaintiff alleges a defamation claim against Defendants Vassar and Denno, and against ten unnamed Defendants. To state a defamation claim under Michigan law, Plaintiff must allege "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005). But defamation claims "must be specifically pled" and include "allegations as to the particular defamatory words complained of." *Ledl v. Quik Pik Food Stores, Inc.*, 349 N.W.2d 529, 532 (Mich. Ct. App. 1984) (quoting *Pursell v. Wolverine-Pentronix, Inc.*, 205 N.W.2d 504, 507 (Mich. Ct. App. 1973)); *see also Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 867 (6th Cir. 2020) ("[M]ost importantly, a plaintiff must identify the precise materially false statement published." (quoting *Rouch v. Enquirer & News of Battle Creek Mich.*, 487 N.W.2d 205, 220 (Mich. 1992) (Riley, J., concurring))).

Plaintiff does not identify a particular false and defamatory statement made by Defendants. She alleges that "[f]alse allegations circulated" that her counsel colluded with the Board of Trustees and demanded money from MSU's general counsel, (ECF No. 13 at PageID.149 ¶¶ 99-100), but does not allege that Defendants made these statements. She alleges instead that Defendants "did not issue public statements supporting Plaintiff against

14

these false allegations." (*Id.* at PageID.150 ¶ 102). Plaintiff provides no legal authority for her contention that failure to affirmatively correct false statements by third parties can suffice for the "false statement" element of a defamation claim. (*See* ECF No. 33 at PageID.511). Defendants' motion will thus be granted as to the defamation claim.

### F.  Public Disclosure of Private Facts

Plaintiff alleges a claim for public disclosure of private facts against Defendants Vassar and Denno, and against ten unnamed Defendants. To state a claim, Plaintiff must allege "(1) the disclosure of information, (2) that is highly offensive to a reasonable person, and (3) that is of no legitimate concern to the public." *Doe v. Mills*, 536 N.W.2d 824, 828 (Mich. Ct. App. 1995); *accord Fisher v. Perron*, 30 F.4th 289, 296 (6th Cir. 2022). Plaintiff alleges that Defendants leaked her identity as the complainant against Tucker to the press. Defendants argue that Plaintiff cannot satisfy the remaining two elements, that the information is highly offensive to a reasonable person and that it is of no legitimate concern to the public. Defendants are wrong on both counts. The Court already explained that the fact of her experience of Tucker's misconduct is highly personal to the point of being constitutionally protected. Michigan courts have also held that information concerning "matters of sexual relations" are private and can give rise to liability under this cause of action. *Mills*, 536 N.W.2d at 830; *see also Fisher*, 40 F.4th at 297 ("Michigan cases finding allegations of highly offensive disclosures to be adequate have involved matters alleged to be of a sensitive nature, such as medical or sexual information."). Similarly, Michigan courts have held that sexual matters are those that "a reasonable person would consider private" and that even if the overall issue in which the plaintiff was involved "may be regarded as a matter of public

interest," that the plaintiff's identity was not a matter "of legitimate public concern." *Mills*, 536 N.W.2d at 830. Here, while Tucker's misconduct may have been a matter of public concern, the identity of his accuser was not. Plaintiff alleged that she expected her identity to remain confidential. (*See, e.g.*, ECF No. 13 at PageID.145 ¶ 38; *id.* at PageID.154 ¶ 162). Defendants cite *Raleigh v. Service Employees International Union*, No. 18-11591, 2019 WL 1294177, at \*7 (E.D. Mich. Mar. 21, 2019), for the proposition that plaintiffs must specifically plead that the information was not of legitimate concern to the public. The court in *Raleigh* explained that "disclosure must concern plaintiffs' private, as distinguished from public, lives." *Id.* (citation modified). Plaintiff has plead that Defendants disclosed private facts by leaking her identity as a victim of sexual misconduct. Plaintiff thus alleges sufficient facts to state a claim for public disclosure of private facts under Michigan law.

### G.  Tortious Interference with Prospective Economic Advantage

Plaintiff alleges a claim of tortious interference with prospective economic advantage against Defendants Vassar and Denno and ten unnamed Defendants. To state a claim, Plaintiff must allege "(1) the existence of a valid business relationship or expectancy[,] . . . (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Courser v. Allard*, 969 F.3d 604, 620-21 (6th Cir. 2020) (quoting *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005)). Plaintiff fails to allege what the specific expectancies were or facts to establish that Defendants knew about them. The mere conclusory allegations reciting the

element of the claim are insufficient. *See Courser v. Mich. House of Representatives*, 404 F. Supp. 3d 1125, 1152 (W.D. Mich. 2019) (dismissing tortious interference claim when plaintiff failed to "identify a single relationship that the [defendants] jeopardized" or knew about). Defendants' motion as to this claim will thus be granted.

### H. Promissory Estoppel

Plaintiff alleges a claim for promissory estoppel against Defendant Board of Trustees. Plaintiff's theory is that the Board made a "clear and definite representation" that the parties would engage in mediation and that Plaintiff detrimentally relied on that promise. To state a claim for promissory estoppel, Plaintiff must allege "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *Ardt v. Titan Ins. Co.*, 593 N.W.2d 215, 219 (Mich. Ct. App. 1999) (quoting *Mt. Carmel Mercy Hosp. v. Allstate Ins. Co.*, 487 N.W.2d 849, 854 (Mich. Ct. App. 1992)).

The "sine qua non of the theory of promissory estoppel is that the promise be clear and definite." *State Bank of Standish v. Curry*, 500 N.W.2d 104, 108 (Mich. 1993). A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made." *Id.* (quoting Restatement (Second) of Contracts § 2 (A.L.I. 1981)). In a conclusory fashion, Plaintiff alleges that MSU "made a clear and definite representation that the parties would promptly engage in good-faith mediation." (ECF No. 13 at PageID.157 ¶ 200). But the factual underpinning for this conclusion appears to be an earlier allegation that MSU "asked

17

Plaintiff if she would consider pre-litigation mediation." (*Id.* at PageID.151 ¶ 115). It is not clear how this constitutes a promise at all. An inquiry into Plaintiff's interest in mediation does not reasonably manifest MSU's commitment to any particular course of action. At most, the question represents a likely willingness to engage in mediation—if Plaintiff was interested and under other unknown conditions—rather than a promise. *See Essroc Cement Corp. v. CPRIN, Inc.*, No. 1:08-cv-974, 2009 WL 2033052, at *15 (W.D. Mich. July 9, 2009). Even if it were a promise, it is not sufficiently clear or definite. Plaintiff offers no facts underlying the suggestion that MSU committed to conduct mediation at any particular time or in any particular way. Without a promise, a promissory estoppel claim cannot proceed, so Defendant's motion will be granted as to this claim.

## I.   Civil Conspiracy to Retaliate and Violate Information Privacy Rights

Plaintiff alleges that Defendants Vassar and Denno, and ten unnamed Defendants, conspired to violate her constitutional rights. To state a claim, Plaintiff must allege "(1) a single plan existed, (2) defendants shared in the general conspiratorial objective to deprive plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to plaintiffs." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767-68 (6th Cir. 2020) (citation modified). That injury must be a constitutional injury, so if the underlying constitutional claim fails, the conspiracy claim does as well. *See PB&J Towing Srv. I & II, LLC v. Hines*, No. 20-6170, 2022 WL 390599, at *5 (6th Cir. Feb. 9, 2022). The Court has already determined that Plaintiff failed to state a claim for First Amendment

18

retaliation, so the Court only evaluates the conspiracy claim as it relates to the information privacy claim.[5]

"[P]leading requirements governing civil conspiracies are relatively strict," *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008), and plaintiffs must "state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy," *Fisher v. City of Detroit*, 4 F.3d 993, *5 (6th Cir. 1993) (table) (quoting *Slotnick v. Stavinskey*, 560 F.2d 31, 33 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077). Plaintiff argues that because she alleges "a limited universe of insiders and aligned actors with access to confidential information" and the "overt acts of leaking the confidential draft statement" and "refusing cooperation with the leak review," she has alleged enough facts to "make an agreement or concerted action plausible." (ECF No. 33 at PageID.511). But she does not cite any particular allegations that could establish that multiple people came together with the unlawful objective of depriving her of her privacy rights. While her allegations could lead to the plausible conclusion that Defendant Denno was the source of information leaked to the press, (*see* ECF No. 13 at PageID.147 ¶¶ 69-70), the section containing those allegations does not plausibly lead to the conclusion that multiple people agreed to accomplish an unlawful objective, (*see id.* at PageID. 147-48 ¶¶ 61-72). There is no allegation that multiple people "agreed to do anything—let alone agreed to violate constitutional rights." *Siefert*, 951

---

[5] Plaintiff may have waived any argument defending the conspiracy claim as it relates to information privacy. Plaintiff does not address the conspiracy claim in the section of her response brief dedicated to the information privacy claim. (*See* ECF No. 33 at PageID.509-10). Plaintiff addresses the conspiracy claim under the heading "The Complaint Plausibly Alleges First Amendment Retaliation and Related Conspiracy." (*Id.* at PageID.510). The paragraph dedicated to discussing conspiracy begins by arguing that the "conspiracy counts are also plausibly pleaded." (*Id.* at PageID.511). Plaintiff does not separately discuss conspiracy to retaliate or conspiracy to violate information privacy rights. Because the Court finds that Plaintiff fails to state a conspiracy claim related to information privacy anyway, the Court need not determine the waiver question.

F.3d at 768. Even if the facts could be reasonably interpreted to suggest that multiple people met before the leaks occurred, there is no allegation supporting the conclusion that multiple of those people shared the objective of causing the leaks and communicated that objective to one another. Defendants' motion as to the conspiracy claim will thus be granted.

### J.   State Law Conspiracy

Plaintiff alleges a state law civil conspiracy claim against all Defendants. The legal framework for the state law conspiracy claim is very similar to the constitutional one. "In Michigan, a claim for civil conspiracy requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Courser*, 969 F.3d at 622 (quoting *Specialized Pharm. Servs., LLC v. Magnum Health & Rehab of Adrian, LLC*, No. 12-12785, 2013 WL 1431722, at \*4 (E.D. Mich. Apr. 9, 2013)). A Michigan civil conspiracy claim "must be pled with some degree of specificity," *Courser*, 969 F.3d at 622 (quoting *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009)), and it must be based on "a separate, actionable tort," *Courser*, 969 F.3d at 622 (quoting *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003)). The only tort claim on which the state conspiracy could be based is the public disclosure of private facts, as Plaintiff has not alleged sufficient facts to sustain any other cause of action.

The conduct underlying the public disclosure of private facts claim and the constitutional information privacy claim are the same, and the different conspiracy claims related to them fail for the same reasons. Plaintiff fails to identify what allegations suggest the existence of a "single plan" or a "general conspiratorial objective" shared by Defendants.

20

*Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D. Mich. 2021). Plaintiff herself argues that "[t]he same factual allegations that support the federal conspiracy theory support the Michigan claim." (ECF No. 33 at PageID.512). They were insufficient for that claim and remain so for this one. Defendants' motion will thus be granted as to the state law conspiracy claim.

### K.  Immunity Defenses

Plaintiff alleges sufficient facts to state a claim under two theories: violation of her constitutional right to information privacy and public disclosure of private facts. Defendants assert various immunity defenses relevant to each one. When the validity of affirmative defenses is "apparent from the face of the complaint," granting a motion to dismiss on that basis is appropriate. *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021).

#### i.        *Eleventh Amendment immunity*

Plaintiff alleges the information privacy and public disclosure of private facts claims against Defendants Vassar and Denno in both their official and individual capacities. "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). In suits against officials in their official capacity, courts "may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." *Id.* at 103. "MSU and its Board of Trustees are arms of the state, entitled to immunity under the Eleventh Amendment." *Uraz v. Mich. State Univ. Bd. of Trs.*, No. 1:19-cv-223, 2019 WL 2442314, at *3 (W.D. Mich. June 12, 2019) (collecting cases); *see also Est. of Ritter v. Univ. of Mich.*, 851 F.2d 846, 848-49 (6th Cir.

1988). Plaintiff does not argue that the State has consented to suit, nor could she. *See, e.g., Will v. Mich. State Police*, 491 U.S. 58, 66 (1989). Instead, she argues that she seeks prospective injunctive relief, so her official capacity claims may continue under the doctrine from *Ex parte Young*, 209 U.S. 123 (1908).

That doctrine, though, permits injunctions restraining an official's future conduct and "has not been provided expansive interpretation." *Pennhurst*, 465 U.S. at 102. Successful invocations of *Ex parte Young* involve continuing violations of federal law, and "if the complaint fails to make clear what those ongoing violations are," it does not apply. *Morgan v. Bd. of Pro. Resp.*, 63 F.4th 510, 515 (6th Cir. 2023). Plaintiff's response brief does not indicate what Plaintiff's theory of ongoing violation is. (*See* ECF No. 33 at PageID.512). The allegations related to the remaining claims are stated in the past tense and Plaintiff does not allege any ongoing injury, only past injury already sustained. (*See* ECF No. 13 at PageID.155 ¶¶ 170-74; *id.* at PageID.156 ¶¶ 189-92). Plaintiff never identifies what the injunction she supposedly seeks would be, seeking only "appropriate prospective injunctive relief" related to her constitutional claims. (*Id.* at PageID.159). The request for prospective injunctive relief is thus nothing more than an unadorned conclusion, and the official capacity claims seek only damages. Defendants are thus entitled to Eleventh Amendment immunity, so Defendants' motion will be granted as to the remaining official capacity claims.

### ii.    Qualified immunity

With that decided, the remaining claims are against Defendants Vassar and Denno in their individual capacities. With regard to the information privacy claim, they are entitled to qualified immunity. To overcome qualified immunity, Plaintiff must allege that

22

Defendants violated her constitutional rights and that "they violated clearly established law in doing so." *Cunningham v. Blackwell*, 41 F.4th 530, 536 (6th Cir. 2022). The Court may decide the qualified immunity question on either prong. *See Pearson v. Callahan*, 555 U.S. 223, 234 (2009). "[A] plaintiff bears the burden of overcoming qualified immunity." *Crawford*, 15 F.4th at 760. Officials' actions are protected by qualified immunity unless "in light of pre-existing law the unlawfulness" is "apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In short, existing law must be sufficient to give "fair notice" to officials that their conduct, in the circumstances they find themselves, is unlawful. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). Clearly established law must not be defined "at a high level of generality," and it must be "'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017). Given that principle, "a complaint distinguishable from our past cases on its face will not often survive a motion to dismiss on qualified immunity grounds." *Crawford*, 15 F.4th at 766.

Here, while the Court finds that the allegations are sufficient to make out a violation of Plaintiff's constitutional right to information privacy, Plaintiff has offered only perfunctory argument that she alleges a violation of clearly established law. Plaintiff dedicates a total of two sentences in her response brief to the qualified immunity discussion as it relates to *all* of her constitutional claims and cites no legal authority. (*See* ECF No. 33 at PageID.512-13). This is reason enough to find that Plaintiff has not carried her burden to demonstrate a violation of clearly established law. *See Koch v. Dep't of Nat. Res.*, 858 F. App'x 832, 837 (6th Cir. 2021) (affirming dismissal of complaint on the clearly established law prong when plaintiff cited "no case that would have put [the defendant] on notice" that his actions were

unconstitutional); *Crawford,* 15 F.4th at 766 (citing *Koch* for the proposition that courts may dismiss cases when plaintiff cites "no case showing a 'clearly established' constitutional violation"); *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (citation modified)).

In her substantive discussion of the information privacy claim, Plaintiff cites *Bloch* and distinguishes cases cited in Defendants' brief but does not discuss qualified immunity. (*See* ECF No. 33 at PageID.509-10). As the Court explained in its finding that Plaintiff alleged a constitutional violation, the reasoning in *Bloch* supports Plaintiff's argument that the Constitution protects her right to keep her identity as a complainant in a sexual misconduct investigation private. But it is not factually apposite in the way necessary to clearly establish that Defendants' behavior was unconstitutional at the time they allegedly acted. *Bloch* involved a police officer holding a press conference related to the plaintiff's claim that she had been raped and releasing "highly personal and extremely humiliating details" of the assault, including "details of the acts perpetrated against her that were so embarrassing she had not even told her husband." 156 F.3d at 676. Plaintiff here does not allege that Defendants leaked similarly lurid or embarrassing details of what happened to Plaintiff. *Bloch* is thus insufficient to clearly establish that revealing a complainant's identity to a reporter in a sexual misconduct investigation was unconstitutional. Plaintiff cites no other authority that could have put Defendants on notice that this conduct was unconstitutional, so she has not met her burden to demonstrate a violation of clearly established law. Defendants'

24

motion regarding the information privacy claim alleged against them in their individual capacities will thus be granted on qualified immunity grounds.

### iii.        *State governmental immunity*

The final remaining claim is the state law public disclosure of private facts claim alleged against Defendants Denno and Vassar in their individual capacities. Under Michigan law, state agencies are "immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." *Siddock v. Grand Trunk W. R.R. Inc.*, 556 F. Supp. 2d 731, 735 (2008) (quoting Mich. Comp. Laws § 691.1407(1)). Public disclosure of private facts is an intentional tort. *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 920 (Mich. Ct. App. 2014). When a plaintiff alleges that a governmental official engaged in an intentional tort, the defendant is immune if the defendant reasonably believed he was acting within the scope of his authority, the acts were taken in good faith and without malice, and the acts were discretionary. *See Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). Plaintiffs must "initially plead" their claims "in avoidance of governmental immunity" in order to relieve "the government of the expense of discovery and trial in many cases." *Id.* at 227.

Plaintiff's response brief, again, offers little to help Plaintiff avoid the application of this defense. In four short sentences, Plaintiff attempts to demonstrate that *all* of her state tort claims are not covered by state governmental immunity. (*See* ECF No. 33 at PageID.513). In so doing, she does not cite the complaint or any legal authority. She argues that "Defendants acted outside legitimate authority, for media-oriented, personal, political, or reputational purposes, and with malice or bad faith." (*Id.*). Plaintiff does not attempt to

connect these broad claims to the specific allegations underlying the public disclosure of private facts claim, in which she alleges that Defendants mishandled her information in the course of an official university investigation. The complaint does contain a general allegation that the "MSU Defendants acted with malice or bad faith and for personal, political, or reputational purposes." (ECF No. 13 at PageID.153 ¶ 144). But this is no more than a conclusory allegation, and it is disconnected from any particular facts which could establish the public disclosure of private facts claim. Plaintiff also alleges, generally, that "MSU Defendants acted outside the scope of any official duties by engaging in media-oriented tactics, using personal devices, and orchestrating extra-judicial dissemination of sensitive information." (*Id.*). Again, Plaintiff does not connect this claim to the conduct underlying the public disclosure of private facts claim. Plaintiff needs to establish that the leak of her identity was done outside the scope of Defendants' authority, with malice, or without discretion.

In the section of allegations related to the leak of Plaintiff's identity, Plaintiff does not make any allegations related to the scope of Defendants' authority or that they acted maliciously. Plaintiff does allege that a report "recognized that trustees are public officials and that misuse of confidential information in a corrupt manner can constitute common-law 'Misconduct in Office.'" (*Id.* at PageID.148 ¶ 71). But a general statement of unapplied principle cannot substitute for a necessary factual allegation that Defendants acted in a particular way or with a particular purpose. The necessary allegations are either absent or stated in such conclusory, general terms as to not be afforded the assumption of truth. *Iqbal*, 556 U.S. at 678. Plaintiff thus has not overcome the state governmental immunity defense,

26

so Defendants' motion as to the public disclosure of private facts claim will be granted. That leaves no claim against the moving Defendants, so their motion will be granted in full.

## IV.

Plaintiff's allegations establish that she was subjected to sexual misconduct and that her information in the course of that investigation was mishandled. But Plaintiff faltered when Defendants properly raised immunity defenses, offering minimal, perfunctory arguments with no citations of specific allegations or legal authority. For each of her claims, Plaintiff either fails to satisfy the necessary elements or fails to demonstrate that the immunity defenses do not apply. Defendants' motion is thus **GRANTED.** Plaintiff's claims against the moving Defendants—the Board of Trustees, Denno, and Vassar—are **DISMISSED.**

**IT IS SO ORDERED.**

Date:  April 14, 2026                                  /s/ Paul L. Maloney
                                                                      Paul L. Maloney
                                                                      United States District Judge